**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Douglas Nordstrom, | No. CV-15-02176-PHX-DGC (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Ryan, et al., | |
| Defendants. | |

Plaintiff Scott Nordstrom filed a complaint against Defendants Charles Ryan, James O'Neil, and Staci Fay, alleging deprivations of his Eighth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Doc. 1. After more than a year of litigation, the parties reached a settlement that called for changes in Defendants' procedures concerning death-row inmates. Docs. 39, 45. Plaintiff has now filed a motion for attorneys' fees and non-taxable expenses. Doc. 46. The motion is fully briefed and oral argument will not aid in the Court's decision. Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant the motion in part.

**I.  Legal Standards.**

A party requesting an award of attorneys' fees and non-taxable expenses must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount. *See* LRCiv 54.2(c). Under the general fee-shifting provision for federal civil rights cases, "the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." *Herrington v. Cty. of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) (internal quotation marks omitted).

To determine the reasonableness of requested attorneys' fees, federal courts generally use the "lodestar" method. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). The Court must first determine the initial lodestar figure by taking a reasonable hourly rate and multiplying it by the number of hours reasonably expended on the litigation. *Blanchard*, 489 U.S. at 94 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court next "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "These factors are known as the *Kerr* factors." *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Such an adjustment is appropriate "only in rare or exceptional circumstances." *Cunningham v. City of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).

**II. Discussion.**

    **A. Attorneys' Fees.**

Section 1988(b) permits a prevailing party to recover reasonable attorneys' fees in a § 1983 action. Defendants contend that Plaintiff is not entitled to recover fees. Doc. 53.

        **1. Prevailing Party.**

Plaintiff argues that he is the prevailing party because he secured a judicially enforceable settlement agreement that materially changed the legal relationship of the parties. Doc. 46 at 2-4. The Court's order of dismissal incorporated the terms of that settlement agreement and "retain[ed] jurisdiction to enforce" it. Doc. 45 ¶¶ 1-2. The settlement agreement required Defendants to take several actions within 120 days of

March 3, 2017: (1) amend policies that mandate maximum custody confinement for death-row inmates, (2) permit death-row inmates to seek reclassification to close custody status, (3) ensure that the conditions of close custody for death-row inmates are "equivalent" to that of non-death row inmates, (4) "provide adequate space for confidential communication with legal counsel" in the close custody facilities for death-row inmates, and (5) reclassify and transfer Plaintiff to close custody confinement. Doc. 39 ¶¶ 1-6.

Because this case concluded without a judgment on the merits, Defendants argue that Plaintiff must satisfy the requirements of the "catalyst theory." Doc. 53 at 2 (citing *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1324-25 (9th Cir. 1988)). Under that test, Defendants argue, Plaintiff has "the burden to establish that the lawsuit accomplished at least in part, what it sought to accomplish and that there was a 'clear, *causal relationship* between the litigation brought and the practical outcome realized.'" *Id.* (quoting *Sablan*, 856 F.2d at 1324 (emphasis in original)). Defendants contend that Plaintiff cannot meet this standard. Doc. 53 at 2-7.

Plaintiff need not meet this standard to qualify as a prevailing party. The Supreme Court abrogated the catalyst theory approximately seventeen years ago. *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002) (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001)). The Ninth Circuit explained:

> the *Buckhannon* Court announced that recovery of attorney's fees requires a court-ordered change in the legal relationship between the parties, in which the legal change that the plaintiff claims to have caused is judicially sanctioned. *Buckhannon* made clear that a defendant's voluntary change in conduct, sufficient for fees recovery under a catalyst theory, lacks the necessary judicial imprimatur to qualify a plaintiff as prevailing party.

*Labotest*, 297 F.3d at 895 (internal quotation marks and citations omitted). Following *Buckhannon*, the Ninth Circuit held that the catalyst theory no longer applied to fee awards under 42 U.S.C. § 1988(b). *Bennett v. Yoshina*, 259 F.3d 1097, 1101 (9th

Cir. 2001) ("The catalyst theory no longer applies to [§ 1988], and any of our precedents to the contrary are overturned.").

Defendants do not cite this authority which clearly forecloses their argument. *See* Doc. 53. Nor do they withdraw the argument in their motion to strike portions of Plaintiff's reply brief that respond to catalyst theory. Doc. 55. Defendants instead represent to the Court that the catalyst theory remains viable for purposes of § 1988(b) because 65 decisions have cited it for "various principles." Doc. 55 at 2 n.2; Doc. 57 at 4 n.2. But the only two cases Defendants specifically cite concern fee awards for the Endangered Species Act, not § 1988(b). Doc. 55 at 2 n.2 (citing *Idaho Watersheds Project v. Jones*, 253 F. App'x 684, 685-86 (9th Cir. 2007); *All. for Wild Rockies v. U.S. Dep't of Agric.*, No. CV 11-76-M-CCL, 2016 WL 4766234, at *3-4 (D. Mont. Sept. 13, 2016)).[1]

The Ninth Circuit has held that "a plaintiff who obtains a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit is a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988." *Labotest*, 297 F.3d at 895. Plaintiff clearly is the prevailing party under this standard. The complaint sought a change in Plaintiff's confinement status. Doc. 1 at 14-15 (seeking order to halt alleged constitutional violations caused by Plaintiff's confinement). Among other things, the settlement required Defendants to change the conditions of Plaintiff's confinement. Doc. 39 ¶ 6. This agreement is binding and enforceable (*id.* ¶ 7), and the Court retains jurisdiction to enforce it. Doc. 45 ¶¶ 1-2. Plaintiff is the prevailing party in this case.

### 2. Lodestar Amount.

Plaintiff sets the initial lodestar amount at $51,393.60 for the Arizona Capital Representation Project ("ACRP") and $24,628.75 for Jackson & Oden. Doc. 46 at 5;

---

[1] In their reply in support of the motion to strike, Defendants acknowledge that "Plaintiff may be technically correct" about the catalyst theory. Doc. 57 at 4. But Defendants nonetheless assert that (1) Plaintiff must still satisfy *Sablan* to show that Defendants' concession was involuntary and (2) the catalyst test remains "a central part of determining the reasonableness of a fee request." *Id.* at 2, 4. The Court will not consider arguments Defendants did not raise in its opposition brief. *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

- 4 -

Doc. 46-1 at 13 (Jackson & Oden); Doc. 46-2 at 5 (ACRP). Plaintiff argues that this lodestar amount reflects (1) hourly rates at or below market rates, (2) the novelty and complexity of the issues, and (3) counsel's work without expectation of compensation. Doc. 46 at 5. Defendants do not oppose the hourly rates Plaintiff requests. Doc. 53 at 7-17. Defendants instead offer four general objections to the time expended on this litigation. *Id.*

Defendants first contend that Plaintiff's counsel billed for a "tremendous amount of work . . . for very little substantive result." Doc. 53 at 7. Defendants characterize this case as a purely legal issue that required no factual development or expert testimony. Doc. 53 at 8-9. Plaintiff's counsel devoted 360 hours, Defendants argue, "to do nothing more than draft a complaint, send out basic discovery, consult on a Rule 16, work on stipulated facts, get ready for a deposition that never occurred, work with an expert that had no relevance, and discuss settlement that was memorialized in less than two pages." *Id.* at 8.

Plaintiff counters that fact development and expert testimony were necessary to establish the two alleged constitutional violations. Doc. 54 at 13-14; *see also* Doc. 1 ¶¶ 73-85. To prevail on his procedural due process claim, Plaintiff would need to show "(1) a deprivation of a constitutionally protected liberty . . . interest, and (2) a denial of adequate procedural protections." *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017) (quoting *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998)); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (adequacy of procedures evaluated in light of the private interest at stake; the risk of erroneous deprivation of liberty, and the probable value of different safeguards; and administrative interests). To prevail on his cruel and unusual punishment claim, Plaintiff would need to show that the conditions of his confinement involved the "'wanton and unnecessary infliction of pain'" or were "devoid of legitimate penological purpose." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To apply these standards, the Court would need facts and expert opinion regarding the nature and effect

of Plaintiff's confinement, the State's interest in its conditions, and the procedures afforded Plaintiff in determining his confinement status.

Plaintiff further argues that the timing of the parties' settlement required his counsel to expend significant time and resources on fact development and expert testimony. Doc. 54 at 11-12. Plaintiff sent Defendants a settlement offer on November 29, 2016, which included many of the substantive terms reflected in the final settlement. Doc. 54-1. Yet the parties did not reach an agreement until March 3, 2017, after the February 24, 2017, fact and expert discovery deadline. Docs. 33, 39. Although the settlement concluded the case before the Court considered fact and opinion evidence, the timing of the settlement required Plaintiff's counsel to work in anticipation of a ruling on the merits. The Court cannot agree that factual development and expert testimony were unnecessary.

Defendants next argue that Plaintiff's counsel impermissibly grouped legal tasks in 16 separate billing entries. Doc. 53 at 9-17. The local rules require itemized billing statements that reflect the "time devoted to each individual unrelated task performed." LRCiv 54.2(e)(1)(B). Plaintiff argues that the tasks identified in the 16 entries are all related. Doc. 54 at 17. Plaintiff further contends that the entries satisfy the minimum requirements set forth in *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). *Id.* But *Fischer* does not hold that an attorney can bill for unrelated tasks in a single entry in violation of this Court's local rules. *See Fischer*, 214 F.3d at 1121. The Court finds that Plaintiff's counsel impermissibly grouped unrelated tasks or provided insufficient detail to identify related tasks in 12 of the 16 entries. The Court will subtract the following entries from Plaintiff's fee request for Jackson & Oden, P.C.: billing ID 36138 ($251.55), billing ID 36604 ($541.80), billing ID 36713 ($580.50), billing ID 36961 ($96.75), billing ID 37460 ($522.45), billing ID 37613 ($425.70), billing ID 37623 ($348.30), billing ID 37783 ($774), billing ID 37896 ($754.65), billing ID 39452 ($503.10), and billing ID 39623 ($38.70). Doc. 46-1 at 7-11. The Court will also

subtract a February 3, 2017, billing entry by the ACRP for $503.10 (2.6 hours at a rate of $193.50). Doc. 46-2 at 5, 13.

Defendants also argue that Plaintiff's legal team unnecessarily included multiple attorneys from the ACRP and Jackson & Oden. Doc. 53 at 10. The size of Plaintiff's legal team, Defendants argue, caused excessive and unnecessary inter-office communication. *Id.* at 11. Defendants identify approximately 140 billing entries that reflect attorney communication. *Id.* at 11-15. And Defendants cite non-binding precedent for the proposition that attorney communication can be unreasonable, disproportionate, or duplicative. *Id.* at 11. Yet Defendants offer no argument that any of the individual entries represents an unreasonable, disproportionate, or duplicative billing of communication. The Court finds that the hours of communication Defendants identify are reasonable in light of the circumstances and length of this litigation.

Defendants finally contend that Plaintiff's counsel billed for a "needless" motion to enforce the settlement stipulation. *Id.* at 16. Defendants argue that the motion was unnecessary, but present no evidence to show that it was actually unnecessary. *Id.* Plaintiff counters that the motion was necessary because Defendants did not comply with the settlement agreement within 120 days. Doc. 54 at 20; *see also* Doc. 41; Doc. 41-1 at 2-4. The fact that Defendants subsequently complied without judicial intervention, Plaintiff argues, does not render the motion unnecessary. Doc. 54 at 20. The Court agrees, and finds that the 8.7 hours spent on this motion were reasonable.

### 3. Enhancements.

Plaintiff relies on *Kelly v. Wengler* to request an enhancement multiplier of 1.5 to compensate counsel for superior performance and attract competent attorneys for prisoner litigation seeking only declaratory or injunctive relief. Doc. 46 at 5-6 (citing 822 F.3d 1085). Specifically, Plaintiff argues that his counsel recognized a serious civil rights issue, secured a reform that affects all inmates, and worked without expectation of compensation. *Id.* The enhancement is appropriate, Plaintiff argues, to reflect counsel's true market value. *Id.* at 6. Defendants oppose any enhancement, arguing that the

circumstances are not so rare or exceptional as to justify an adjustment. Doc. 53 at 15-16. The Court agrees with Defendants.

Plaintiff has not established that an enhancement for superior performance is appropriate. "[T]he district court may enhance the lodestar figure when plaintiff's counsel's 'superior performance and commitment of resources' is 'rare' and 'exceptional' as compared to the run-of-the-mill representation in such cases." *Kelly*, 822 F.3d at 1103 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-54 (2010)). The *Kelly* court explained:

> In *Perdue*, the Supreme Court held, although the lodestar figure typically subsumes the "novelty and complexity of a case" and "the quality of an attorney's performance," a court may enhance the lodestar in "rare" and "exceptional" circumstances when the lodestar figure does not adequately represent counsel's "superior performance and commitment of resources." The Court gave several examples of such circumstances, including one that is relevant here. A court may enhance the lodestar figure when "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation."

822 F.3d at 1102 (quoting *Perdue*, 559 U.S. at 553-55).

*Kelly* granted an enhancement for superior performance where

> Plaintiffs' counsel had only twenty-six days to conduct discovery in preparation for the contempt hearing. During that period, Plaintiffs' two attorneys not only engaged in extensive motions practice, writing numerous pre-trial briefs; they also conducted an extraordinary amount of discovery. They interviewed, deposed, and prepared numerous witnesses in three states and obtained and reviewed roughly 7,000 pages of discovery. Most of the documents were produced for their review only five days before the beginning of the hearing. Some were even produced for review on the first evening of the hearing. Despite these constraints, Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement. Based on this evidence, they obtained a contempt finding and secured significant remedies for their clients.

822 F.3d at 1103. Although Plaintiff's counsel succeeded in securing prison reforms, his motion does not show that they provided the kind of rare or exceptional representation

required for an enhancement of the lodestar amount. Doc. 46 at 5-6. The Court therefore will deny an enhancement for superior performance.

Nor has Plaintiff established that an enhancement is necessary to attract competent counsel for cases such as this. The Ninth Circuit explained the circumstances in which such an adjustment is appropriate:

> When a plaintiff demonstrates with *specific evidence* that no competent attorney is willing to take on a meritorious civil rights case because of insufficient fees, the district court furthers the PLRA's purpose by enhancing the lodestar figure by an amount reasonably calculated to induce competent lawyers in the relevant community to take such cases.

*Kelly*, 822 F.3d at 1104 (emphasis added) (citing *Perdue*, 559 U.S. at 554). *Kelly* granted an enhancement to attract competent counsel based on four affidavits that attested to and explained the dearth of attorneys that would take such a case in Idaho. *Id.* at 1104-05. Plaintiff's motion presents no such evidence. Doc. 46 at 5-6. The Court therefore will deny an enhancement to attract competent counsel.[2]

### B. Non-taxable Expenses.

Plaintiff requests $11,904.17 in non-taxable expenses. Doc. 46 at 6. This figure includes $11,552.97 in expert fees. *Id.*; Doc. 46-2 at 22-32. Plaintiff argues that expert fees typically are billed separately and are permitted under § 1988. Doc. 46 at 7 (citing *Trustees et al. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006) ("If fees for work performed by non-attorneys are customarily billed separately in the relevant market, those fees are recoverable as 'reasonable attorney's fees' under 29 U.S.C. § 1132(g)(2)(D).")).

Section 1988(b) does not permit the recovery of expert fees in § 1983 actions. The Supreme Court held in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83

---

[2] Plaintiff offers new evidence in his reply brief to support his request for these two enhancements. Doc. 54 at 18-10; Doc. 54-4. This evidence does not contravene Defendants' opposition, but instead provides further support to arguments Plaintiff made in his motion. The Court will not consider evidence presented for the first time in a reply brief. *Gadda*, 511 F.3d at 937 n.2; *Cowboy v. Zinke*, No. CV-16-08094-PCT-DGC, 2018 WL 619722, at *4 (D. Ariz. Jan. 30, 2018).

(1991), that a prior version of § 1988 did not permit the recovery of expert fees. *Id.* at 102. Congress then amended § 1988 to specifically permit the recovery of expert fees in cases arising under §§ 1981 and 1981a. Civil Rights Act of 1991, Pub. L. No. 102-166, § 113(a)(2), 105 Stat. 1071, 1079. Congress could have, but did not, specify that a prevailing party could recover expert fees in a case arising under § 1983. *Id.* The *Casey* decision therefore remains binding with respect to claims arising under § 1983. *E.g.*, *Jenkins ex rel. Jenkins v. Missouri*, 158 F.3d 980, 983 (8th Cir. 1998); *Vargas v. Howell*, No. 2:14-CV-1942 JCM (CWH), 2018 WL 1077278, at *6 (D. Nev. Feb. 27, 2018); *Sanchez v. Cty. of San Bernardino*, No. CV 10-09384 MMM (OPx), 2014 WL 12734756, at *20 (C.D. Cal. Mar. 10, 2014); *Agster v. Maricopa Cty.*, 486 F. Supp. 2d 1005, 1019 (D. Ariz. 2007). The Court accordingly will deny Plaintiff's request for expert fees.

Plaintiff's request includes $351.20 in ACRP travel expenses. Doc. 46 at 6; Doc. 46-2 at 22. Defendants do not challenge this request. Doc. 53 at 17. The Court finds this request reasonable and will accordingly award $351.20 to Plaintiff.

### III. Motion to Strike.

Defendants ask the Court to strike portions of the Plaintiff's reply in support of his motion for fees. Doc. 55. The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Johnson v. Cal. Med. Facility Health Servs.*, No. 2:14-cv-0580 KJN P, 2015 WL 4508734, at *6 (E.D. Cal. July 24, 2015).

Defendants argue that Plaintiff cannot satisfy the requirements of the catalyst test. Doc. 53 at 2-7. For reasons explained above, the catalyst test is no longer controlling. The Court will deny the motion to strike.

**IV. Conclusion.**

The Court will award Plaintiff attorneys' fees in the amount of $46,556.10 for the ACRP and $24,125.65 for Jackson & Oden. The Court finds this award to be reasonable in light of all relevant factors, including the relevant *Kerr* factors. The Court will deny Plaintiff's request for expert fees, but will grant his request for $351.20 for the ACRP's travel expenses.

**IT IS ORDERED:**

1. Plaintiff's motion for fees and expenses (Doc. 46) is **granted in part** as set forth above.
2. The Clerk is directed to **terminate** this action.

Dated this 2nd day of April, 2018.

_____
David G. Campbell
United States District Judge