**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Douglas Nordstrom,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, Director of the Arizona Department of Corrections; James O'Neil Warden, ASPC Eyman; and Staci Fay, Deputy Warden, Browning Unit,<br><br>Defendants. | No. CV15-02176-PHX-DGC<br><br>**ORDER** |

Before the Court is John E. Sansing's motion to enforce a settlement agreement between Plaintiff Scott Nordstrom and Defendants Arizona Department of Corrections ("ADOC") and others. Doc. 117. The motion is fully briefed, and oral argument has not been requested. For the following reasons, the Court will deny the motion.

**I.    Background.**

In October 2015, Plaintiff Nordstrom, a death-sentenced inmate in state custody, brought an action against Defendants for violations of the Eighth and Fourteenth Amendments related to death row conditions. Doc. 1. Having already planned to make death row inmates eligible for reclassification to close-custody housing, ADOC settled with Plaintiff on March 3, 2017 ("the Settlement"). Doc. 39. The Settlement provided:

> [ADOC will] eliminate the existing permanent classification of inmates with a death sentence to maximum custody units, and [] permit death row inmates to seek and obtain re-classification to close custody status based on the

criteria currently available to non-death sentenced maximum custody inmates[;]

Death sentenced inmates who are re-classified to close custody status may be housed as a group, rather than with non-death sentenced inmates, provided, however, that nothing herein shall alter existing protocols and procedures relating to protective custody assignments.

[The] conditions and restrictions of confinement, and quality of facilities, utilized for close custody housing for death sentenced inmates shall be equivalent to that of existing close custody housing facilities used for non-death sentenced inmates.

***

Plaintiff's current disciplinary record meets the criteria for reclassification to close custody and he shall be reclassified to such status and transferred to such housing upon adoption of the above referenced amendments, within one hundred twenty (120) days of this stipulation. Nothing in this stipulation shall be interpreted to require Plaintiff to remain classified as a close custody inmate if he no longer meets the requirements for close custody classification.

*Id.* at 2 ¶¶ 1-3, 6. Based on this settlement agreement, the Court dismissed Plaintiff's action, incorporated the Settlement terms in its order, and retained jurisdiction to enforce the agreement. Doc. 45.

In September 2018, Plaintiff Nordstrom filed a motion to enforce the settlement agreement, asserting that Defendants failed to provide other inmates with the "'conditions and restrictions of confinement, and quality of facilities' that are 'equivalent to that of existing close custody housing facilities used for non-death sentenced inmates.'" Doc. 60 at 5. The Court denied the motion, holding that Plaintiff Nordstrom could not seek relief on behalf of other inmates because he "did not bring this case as a class action, and the Settlement was only between Plaintiff and Defendant." Doc. 72 at 6.

John E. Sansing has never been a party to this action, but nonetheless seeks relief under the Nordstrom settlement. He asserts that he qualifies for close custody status, and that Defendants have breached the Settlement by denying him an interrelation phone call

with his wife on the basis of his death-sentenced status. Doc. 117 at 2. Sansing sought relief through ADOC's grievance process, requesting that the policy be changed to allow all death-sentenced inmates to make and receive interrelation phone calls if they otherwise qualify based on their institutional risk score and custody status. *Id.* at 2. In response, ADOC scheduled the phone call between Sansing and his wife (who is also incarcerated) and stated that no further action would be taken to amend the policy. Doc. 117 at 16.

## II. Jurisdiction.

"In general, '[e]nforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.'" *Alvarado v. Table Mountain Racheria*, 508 F.3d 1008, 1017 (9th Cir. 2007) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)). But "a federal court has jurisdiction to enforce a settlement agreement in a dismissed case when the dismissal order incorporates the settlement terms, or the court has retained jurisdiction over the settlement contract" and a party alleges a violation of the settlement. *Id.* Under those circumstances, a breach of the agreement is a violation of the court's order and the court has jurisdiction to enforce the agreement. *Kokkonen*, 511 U.S. at 381. Where an order grants relief to a nonparty, the Court may enforce the order using the same procedures available to a party. *See* Fed. R. Civ. P. 71. Because the Court's order in this case incorporated the terms of the Settlement and retained jurisdiction (Doc. 45), the Court has jurisdiction to hear Sansing's motion to enforce the Settlement if the order grants him relief as a nonparty.

## III. Legal Standard.

In Arizona, "settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *Emmons v. Sup. Ct. for Cty. of Maricopa*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998); *Knudsen v. C.I.R.*, 793 F.3d 1030, 1035 (9th Cir. 2015); *see Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (a motion to enforce a settlement agreement is essentially "an action to specifically enforce a contract"). Interpretation of a contract is generally a matter of law,

*see Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006), but whether a party has breached the contract is a question for the trier of fact, *see Walter v. F.J. Simmons*, 818 P.2d 214, 218-19 (Ariz. Ct. App. 1991).

**IV.     Standing.**

Defendants argue that Sansing lacks standing and cite to the Court's previous order finding that seven death-sentenced inmates lacked third-party standing to enforce the Settlement. Doc. 110. The seven inmates affected by that order asserted standing under Rule 71 and the Ninth Circuit's decision in *Hook v. Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992). *Id.* at 4. Sansing does not assert standing on those bases, but he does state that he is a beneficiary to the Settlement. Doc. 117 at 1.

For a person to obtain relief as a third-party beneficiary of a contract in Arizona, the intent to benefit the person must be found in the contract itself. *Norton v. First Fed. Savings*, 624 P.2d 854, 856 (1981) (citing *Irwin v. Murphey*, 302 P.2d 534 (1956)). The contemplated benefit must be both intentional and direct. *Id.* It is not enough that a contract may operate to a person's benefit – it "must appear that the parties intended to recognize the [person] as the *primary* party in interest and as privy to the promise." *Sherman v. First Am. Title Ins.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002) (citation omitted) (emphasis in original); *Tanner Cos. v. Ins. Mktg. Servs., Inc.*, 743 P.2d 951, 953 (Ariz. Ct. App. 1987) (stating a party may not recover as a third party beneficiary "if it is merely an incidental beneficiary . . . rather than one for whose express benefit the [contract] was made"). Whether a person is an incidental or direct beneficiary is a question of contract construction for the Court. *Maganas v. Northroup*, 663 P.2d 565, 567 (1983).

The Court cannot conclude that the parties to the Settlement intended to recognize Sansing as the primary party in interest and as privy to the Settlement. *Sherman*, 38 P.3d at 1232. The contract does not name Sansing or indicate that he is an intended direct beneficiary, and Plaintiff Nordstrom did not bring this case as a class action or as a suit on behalf of other inmates. Further, the Court did not enter a consent decree after finding

broad constitutional or statutory violations; the Court simply accepted a settlement negotiated between the parties to this case.

The Settlement specifically provides relief for Plaintiff Nordstrom, who clearly was the primary party in interest and the recipient of the Settlement guarantee. *Basurto v. Utah Const. & Mining Co.*, 485 P.2d 859, 863 (Ariz. Ct. App. 1971). Sansing is an incidental beneficiary, not a primary party in interest and privy to the Settlement.

## V. Conclusion.

Sansing does not have standing as an intended third-party beneficiary to enforce the Settlement, and the Court will deny his motion. Nothing in the Court's order should be construed as ruling on the merits of Sansing's allegations of unequal treatment, which, if viable, must be asserted in a separate lawsuit.[1]

**IT IS ORDERED** that the motion to enforce the settlement (Doc. 117) is **denied**.

Dated this 1st day of October, 2019.

David G. Campbell
Senior United States District Judge

---

[1] Defendants also assert that even if Sansing had standing to enforce the agreement, his claim is moot because ADOC granted his request for an interrelation phone call. Docs. 117 at 16, 118. The Court disagrees because Sansing is seeking amendment to the policy on interrelation phone calls, not the ability to make one call. Doc. 117 at 1-3.